# EXHIBIT O

1

```
1          IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF KANSAS
2                    TOPEKA, KANSAS        ORIGINAL

3        _____
                                        )
4        In Re:  WESTAR ENERGY, INC.   )   Case No.
         ERISA LITIGATION              )   03-4032-JAR
5        _____)

6
                TRANSCRIPT OF FAIRNESS HEARING
7
             PROCEEDINGS had before the Honorable
8        Julie A. Robinson, United States District
         Court Judge, for the District of Kansas,
9        Topeka, Kansas, on the 27th day of July,
         2006.
10
         APPEARANCES:
11
         For the              Joseph H. Meltzer, Esq.
12       Plaintiffs:          SCHIFFRIN & BARROWAY, LLP
                              280 King of Prussia Road
13                            Radnor, PA  19087

14                            Ronald P. Pope, Esq.
                              Ralston, Pope & Diehl, LLC
15                            2913 S.W. Maupin Lane
                              Topeka, KS  66614
16
         For Defendant        Sharon Katz, Esq.
17       Westar Energy:        Antoinette Ellison, Esq.
                               DAVIS POLK & WARDWELL
18                             450 Lexington Avenue
                               New York, NY  10017
19
                               Jason M. Hans, Esq.
20                             ROUSE HENDRICKS
                                 GERMAN MAY PC
21                             One Petticoat Lane Building
                               1010 Walnut Street
22                             Suite 400
                               Kansas City, MO  64106
23
         For Defendant        Stanley M. Burgess, Esq.
24       Koupal:              ARMSTRONG TEASDALE LLP - KC
                              2345 Grand Boulevard
25                            Suite 2000
                              Kansas City, MO  64108-2617
```

SHERRY A. BERNER
Official Court Reporter



2

```
1     For Defendant        Kathryn A. Lewis, Esq.
2     Terrill:             WARDEN TRIPLETT GRIER PA
                           9401 Indian Creek Parkway
3                          Suite 1100
                           Overland Park, KS  66210
4
5     Court Reporter:      Sherry A. Berner, C.S.R.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SHERRY A. BERNER
Official Court Reporter

3

```
 1                    PROCEEDINGS
 2              THE COURT:  All right.  We will call
 3    In Re:  Westar Energy, Inc. ERISA Litigation,
 4    case number 03-4032.  Your appearances.
 5              We'll begin with you, Ms. Lewis,
 6    you're on the phone.
 7              MS. LEWIS:  Yes.  It's Kathryn Lewis
 8    for Defendant Richard Terrill.
 9              THE COURT:  All right.  And other
10    appearances, please.
11              MR. MELTZER:  Good afternoon, Your
12    Honor.  Joseph Meltzer of Schiffrin &
13    Barroway on behalf of the plaintiffs.  Joined
14    with me is cocounsel, Ron Pope.
15              MS. KATZ:  And Sharon Katz of Davis
16    Polk & Wardwell, and my colleague, Antoinette
17    Ellison, from Davis Polk & Wardwell, for
18    Westar Energy.  And Mr. Hans on--
19              MR. HANS:  Jason Hans on behalf of
20    Westar Energy.
21              THE COURT:  All right.
22              MR. BURGESS:  I'm Matthew Burgess
23    from Armstrong Teasdale on behalf of Carl
24    Koupal.
25              THE COURT:  All right.  And we're
```

4

```
1    here for the fairness hearing on the
2    settlement of the class action in this case.
3              On May 15th of this year I held a
4    preliminary settlement hearing and
5    preliminarily approved the settlement,
6    ordered that notice be given, as set forth in
7    the order preliminarily approving settlement.
8    And in preliminarily approving the settlement
9    I conditionally certified the class,
10   preliminarily approved the terms of the
11   settlement, and set this date for today's
12   hearing, and, of course, approved the class
13   notice of proposed settlement.
14             You all have now submitted a
15   proposed order and final judgment.  And in
16   addition we've received the motion of the
17   plaintiffs for final approval; a memorandum
18   in support of class counsel's motion for
19   award of attorneys' fees, expenses, and case
20   contribution compensation as well; a
21   declaration of Mr. Meltzer in support of the
22   motions for settlement and awarded fees,
23   compensation, and reimbursement of expenses;
24   a declaration of Mr. Pope concerning that as
25   well.
```

5

1           All right.  Mr. Meltzer or Ms. Katz,

2    who is going to proceed?

3           MR. MELTZER:  I will, Your Honor.

4           THE COURT:  All right, go ahead.

5           MR. MELTZER:  Thank you.  Your

6    Honor, we are pleased to be here today.  And

7    as you stated, we're here to present a

8    settlement of all claims in the Westar ERISA

9    litigation.  As Your Honor has alluded to, a

10   lot of papers have been filed in our

11   presentation so I won't cover everything in

12   those papers or it would drag on far too

13   long; but I think I'll hit the relevant

14   points.

15          As I stated, we have a settlement of

16   all claims in the Westar ERISA case.  It

17   was-- the settlement was the product of some

18   rather strenuous and extensive negotiations

19   between the parties.  We're proud to present

20   the settlement.  We think in light of the

21   litigation risk and the damage analogies in

22   this case that it's an excellent result for

23   the ERISA class.

24          The settlement calls for a payment

25   of 9.25 million that will be paid by the

SHERRY A. BERNER
Official Court Reporter

6

1    defendants into the Westar Energy 401(k)

2    savings plan.  That money will then be

3    distributed to class members and plan

4    participants in accordance with the plan of

5    obligation that we've submitted in

6    conjunction with the settlement.

7         Two points I would want to make

8    quickly.  First, the settlement has been

9    reviewed by an independent fiduciary.  The

10   independent fiduciary was retained by Westar

11   in its corporate capacity and as a fiduciary

12   of the plan.  The independent fiduciary in

13   this case is Independent Fiduciary Services,

14   Incorporated.  Essentially what they do is

15   they come in to look and see that the

16   settlement meets the DOL class exemption, and

17   also that it's not a prohibited transaction

18   under Section 406 of ERISA.  Essentially,

19   they need to make a determination that the

20   release given in consideration for the value

21   of the settlement is fair and that the

22   fiduciaries were not engaged in self-dealing.

23         They have authorized the settlement.

24   Your Honor has, obviously, the ultimate

25   discretion to approve.  But in a case such as

SHERRY A. BERNER
Official Court Reporter

7

1   this it's usually a good sign when the

2   independent fiduciary gives its blessing to

3   the settlement.

4           The other point I would make is that

5   there have been no objections to either the

6   motion for approval or for the application of

7   fees.  That's especially telling in this case

8   because we have a -- as Mr. Pope would tell

9   you -- a very active, interested class.  They

10  were very involved, very engaged in this

11  entire process.  And they have unanimously

12  endorsed the settlement, and no one has

13  lodged any objections to any of the motions

14  pending today.

15          The two motions that are on calendar

16  for today, as Your Honor stated, are a motion

17  for final approval of settlement,

18  certification of the settlement class and

19  approval of the plan of allocation; and a

20  second motion for an award of attorneys'

21  fees, reimbursement of expenses and case

22  contribution compensation.  And, Your Honor,

23  with your permission, I can address the

24  settlement first.

25          THE COURT:  Go ahead.

8

1           MR. MELTZER:  The-- Your Honor,

2    would it be helpful if I gave a background of

3    the claims and the history of the litigation?

4    That's set forth at length in the papers, but

5    I would be happy to do it for the record.

6           THE COURT:  No.  I think you can

7    summarize that.

8           MR. MELTZER:  Okay.  Your Honor,

9    just briefly, the first case in the Westar

10   ERISA litigation was filed in March of 2003.

11   The central claim is that the plan

12   fiduciaries breached their duties under ERISA

13   by allowing investments in the company stock

14   at a time when they knew or should have known

15   that those investments were imprudent.

16           There were many cases that were

17   filed after the Toledo case, the first case

18   filed in March.  There were several cases

19   filed afterwards.

20           Your Honor consolidated those cases

21   in September of 2003.  We filed a

22   consolidated pleading -- which is the

23   operative complaint for today -- in October

24   of 2003, and that touched off a flurry of

25   briefings, several motions to dismiss,

SHERRY A. BERNER
Official Court Reporter

9

1    consolidated response, numerous replies.

2    Your Honor, we started informal

3    settlement negotiations in the summer of

4    2004.  We continued those through the fall to

5    essentially pick a mediator.  Our first

6    mediation -- there wound up being four total

7    -- was in December of 2004 with Gary McGowan,

8    who presided over each and every mediation in

9    this case.

10    Unable to resolve the case, we went

11    back into litigation posture in 2005.  We

12    essentially engaged in a formal

13    discovery protocol at that point that was

14    presided over by Magistrate Judge O'Hara.

15    The defendants produced a large volume of

16    documents.  We prepared, we analyzed, and

17    coded some of those documents.  We set up an

18    electronic database for further analysis.

19    We also continued on a settlement

20    track, fortunately, as we were going through

21    formal discovery.  We had another mediation

22    -- excuse me -- in the spring of 2005 that

23    was, obviously, unsuccessful.  We pressed

24    forward with a lot of discovery in the case.

25    We had yet another mediation in

1    October of 2005. And while we weren't able

2    to resolve the case at that time, it did

3    break some of the log jam, frankly. There

4    was a fair amount of progress in October of

5    2005. That may partly be the result of Your

6    Honor's ruling in September of 2005 on the

7    motions to dismiss. Gave people a better

8    sense of what the claims were going to be in

9    this litigation.

10    We scheduled a final mediation for

11    January 31st of this year. We were able to

12    reach an agreement at that time. We signed

13    the term sheet on that day and began the

14    settlement process which leads us to today's

15    hearing.

16    In terms of the approval process,

17    the Tenth Circuit has established a

18    four-factor test to determine whether the

19    settlement is fair, reasonable, and adequate.

20    The test is set forth in the Tenth Circuit

21    case Jones v. Nuclear Pharmacy.

22    I'll go through them briefly. The

23    first factor is whether the proposed

24    settlement was fairly and honestly

25    negotiated. Your Honor, as I just explained,

11

```
 1    there were multiple mediations.  There were
 2    formal negotiations with an experienced
 3    mediator.  There were informal negotiations.
 4    The negotiation process in this case was
 5    arms-length, to say the least, and was
 6    strenuous and was fair and honest.
 7            The second factor is whether serious
 8    questions of law and facts exist, placing the
 9    ultimate outcome of the litigation in doubt.
10    Your Honor, as a lot of courts have noted,
11    these are difficult cases.  ERISA itself is a
12    very difficult statute.  There are complex
13    questions.  And when you factor in the class
14    certification aspects of this case, you find
15    a way to make an ERISA case even more
16    complicated.  So I think that factor also
17    militates in favor of approval.
18            The third factor is whether the
19    value of an immediate recovery outweighs the
20    mere possibility of future relief after
21    protracted and expensive litigation.  Your
22    Honor, in this particular case, given what
23    our prospects were for success, even if we
24    overcame every legal hurdle by very capable
25    opposing counsel, I'm not sure that we would
```

12

1   have done any better; and we may have wound

2   up getting a little bit less for the class

3   settlement.  This factor is particularly in

4   favor of approval here because we were able

5   to get a recovery which may well exceed what

6   we would have gotten even if we would have

7   won through judgment.

8          The fourth factor is the judgement

9   of the parties that the settlement is fair

10  and reasonable.  I think everyone here today

11  will essentially endorse the settlement as

12  fair and reasonable.  I know I do.  I'm

13  fairly confident that my colleagues on the

14  defense side will as well.  And I think those

15  four factors are what the Tenth Circuit views

16  in terms of assessing whether a settlement

17  should be approved.  I think they're all met

18  here.

19          The only other point that I would

20  make with respect to the settlement, Your

21  Honor, again, is that there have been no

22  objections.  So the reaction of the class has

23  been overwhelmingly and unanimously, frankly,

24  in support of approval.

25          The other aspect of the settlement

SHERRY A. BERNER
Official Court Reporter

13

1  approval is for certification of the

2  settlement class.  We think that Your Honor

3  mentioned that you preliminarily certified

4  the settlement class.  We think that the

5  class certification in this case is very

6  appropriate.  A 23(b)(1) class should be

7  certified.  The class that we're seeking to

8  certify for settlement purposes is a

9  participant or beneficiary in the Westar

10 Energy employees' 401(k) savings plan from

11 July 1st, '98, through January 1st, 2003,

12 whose account included investments in Westar

13 stock.

14         Your Honor, as our papers explain in

15 some length, I think all the factors of 23(a)

16 are met, as well as the factors of 23(b)(1)

17 have also been satisfied.  There have been a

18 number of these cases both in a settlement

19 context and in a litigation context, this

20 ERISA employer stock type of case.  I believe

21 they have all been certified under 23(b)(1)

22 as a non opt-out class.  And we think that's

23 appropriate here.

24         Your Honor, I don't-- I don't have

25 anything more on the settlement itself unless

SHERRY A. BERNER
Official Court Reporter

14

1   Your Honor has any questions.

2            THE COURT:  I don't believe so.

3            Would anyone else like to weigh in

4   on this matter?

5            MS. KATZ:  If I might just for a

6   second, Your Honor, just to say on behalf of

7   Westar that we are very pleased to be here at

8   what we hope is now the conclusion of the

9   trilogy of civil cases that had originally

10  been presented to Your Honor, and we are very

11  pleased with the settlement.  We do believe

12  that it is fair, reasonable, and adequate.

13            The settlement negotiations were

14  very, very hard-fought.  This was a very,

15  very difficult case for us to resolve.  But

16  we are very pleased with the results, and we

17  think that they will be of great benefit to

18  the members of the class, and we just urge

19  that Your Honor approve the settlement as

20  described by Mr. Meltzer and the

21  certification of the class.  Thank you.

22            THE COURT:  All right.  Thank you.

23            Anyone else?

24            All right.  I'll begin with the

25  matter of the certification of the class.

15

1    And, yes, there have been no objections by

2    any single class member to the certification

3    of the class, to the settlement, or to the

4    related matters concerning allowance of fees

5    and expenses and compensation.  I did

6    conditionally certify the class at the

7    preliminary hearing.  I'll now reiterate my

8    findings that class certification is proper

9    for the class, as defined in the preliminary

10   order.

11        The requirements of Rule 23(a) are

12   met.  The numerosity requirement is met.

13   This class consists of several thousand

14.  potential class members.  Joinder is not

15   practicable.

16        The requirement of commonality is

17   met.  There are common issues of fact and

18   law, including whether the defendants

19   breached fiduciary duties owed to the plan

20   and their participants in allowing the

21   maintenance of existing, and the addition of

22   new, investments in the company stock during

23   the proposed class period; issues concerning

24   whether the defendants knew or should have

25   known of problems besieging the company that

16

```
 1       negatively affected the prudence of Westar
 2       stock as an investment of the plan during the
 3       class period.
 4              Other common issues:  Whether
 5       defendants were fiduciaries of the plan
 6       and/or the participants; whether defendants
 7       breached their fiduciary duties, if they were
 8       fiduciaries; whether the plans and the
 9       participants were injured by such breaches;
10       and whether the class is entitled to damages
11       and injunctive relief.
12              The requirement of typicality is met
13       in that the claims of the class
14       representatives are typical of the claims of
15       the class as a whole.  The plaintiffs in this
16       case and the proposed class are all employees
17       of Westar, a participant of the plan during
18       the class period, and each had part of his or
19       her individual plan investment portfolio
20       invested in Westar stock during the class
21       period.
22              All of them-- all of the plaintiffs
23       sustained injury during the class period; and
24       all of the plaintiffs bring their claims
25       pursuant to ERISA Sections 409 and 502(a)(2)
```

:7

```
 1    for plan-wide relief, so any relief obtained
 2    would inure to the plan as a whole and,
 3    derivatively, to its participants during the
 4    class period.
 5              And the requirement for adequacy of
 6    representation is also met.  The named
 7    plaintiffs and their counsel are adequate
 8    representatives of the interests of the class
 9    as a whole.  I find that plaintiffs have no
10    interest antagonistic to the interests of the
11    absent class members.
12              Plaintiffs have retained attorneys
13    that are highly qualified and experienced in
14    this type of litigation, ERISA breach of
15    fiduciary class actions, specifically.  And
16    based on all of the pleadings in the entire
17    record, I find that they have diligently
18    represented the class before the Court as
19    well as in negotiations with defendants'
20    counsel that resulted in this settlement.  So
21    all of the requirements of 23(a) are met.
22              Also, the requirements of 23(b)(1)
23    are met in that the only remedy available to
24    the plan participants is in fact plan-wide
25    relief, including the restoration of losses
```

page

18

1    to the plan.  Actions such as this are by law

2    representative actions which, if successful,

3    will cause defendants to be obligated to

4    provide relief applicable to all participants

5    in the plan.

6         And given the unique group based

7    relief offered under ERISA for violations of

8    the fiduciary duties owed to participants in

9    covered benefit plans, these actions are

10   appropriate for class treatment under

11   Rule 23(b)(1) to avoid the risk of

12   inconsistent outcomes and inconsistent

13   standards of conduct for defendants; as well

14   as, the prosecution of separate individual

15   actions would, as a practical matter, be

16   dispositive of the interests of other class

17   members who were not parties to the action.

18        Thus, I will certify the proposed

19   class pursuant to Rule 23 for settlement

20   purposes.  The class being defined as set out

21   in the pleadings.  In short:  Any person who

22   was a participant in or beneficiary of the

23   Westar 401(k) employees' savings plan from

24   July 1, 1998, through January 1, 2003, and

25   whose account in the plan included

19

1    investments in the Westar Energy, Inc.

2    company stock fund.

3         Excluded from the settlement class

4    are all defendants named in the action, their

5    subsidiaries and affiliates, members of their

6    immediate family, the legal representatives,

7    heirs, successors or assigns of any excluded

8    person, as well as any entity in which the

9    company has or has had a controlling

10   interest.

11        All right.  And then turning to the

12   proposed settlement itself, first of all,

13   I'll find that notice to prospective class

14   members was adequate.  I approved the

15   proposed class notice of proposed settlement

16   at the last hearing.

17        The administrator filed an affidavit

18   on July 17, 2006, establishing that notice

19   was mailed to the class, as ordered, and it

20   was also published in accordance with the

21   terms of the preliminary order.  Notice was

22   sent to 3,871 current and former participants

23   of the plan on May 26, 2006, and the approved

24   publication notice was published nationally

25   in *USA Today* and locally in *The Kansas City*

20

1    *Star*, *The Wichita Eagle*, and *The Topeka*

2    *Capital-Journal*.  Also, plaintiffs created a

3    dedicated settlement website, which is

4    identified in the pleadings.

5            The form and method of notice was

6    agreed to by the parties; it was approved by

7    the Court; it was effectuated by the

8    plaintiffs, consistent with the order; and it

9    satisfies all due process considerations and

10   meets the requirements of 23(e)(1)(B).

11           All right.  Turning to final

12   approval of the settlement, as Mr. Meltzer

13   has indicated, under the Tenth Circuit

14   prevailing case law there are four factors

15   the Court must address and consider when

16   determining whether the proposed settlement

17   is fair, reasonable, and adequate.

18           The first such factor is that the

19   settlement was fairly and honestly

20   negotiated.  As the pleadings set out in

21   detail, and as Mr. Meltzer summarized, this

22   settlement is the product of lengthy

23   litigation as well as mediation and

24   negotiation: 18 months or more of formal and

25   informal negotiations; multiple mediation

21

1   sessions with an experienced mediator, who

2   was also the mediator in the Westar

3   securities litigation; voluminous discovery;

4   as well as intense advocacy and litigation

5   through this stage of motions to dismiss and

6   responses to that.

7          In addition, the Court finds that

8   class counsel had an in-depth understanding

9   of the merits of plaintiffs' claims and the

10  defenses available to defendants.  Plaintiffs

11  counsel had the same.  The Court-- in

12  addition, of course, there was this oversight

13  or independent evaluation by a third party

14  experienced in this type of litigation.  So

15  based on all of these things, the Court

16  concludes that the settlement was fairly and

17  honestly negotiated.

18         The second factor is that there be

19  existence of serious questions of law and

20  fact.  This is obviously evident to the Court

21  based on having reviewed and considered and

22  ruling on a number of issues that arose in

23  the context of the motions to dismiss.

24         In addition, more generally, as

25  plaintiffs point out, ERISA is a developing

22

1    and esoteric area of the law.  It does

2    present many difficult issues of law and fact

3    made more complex, of course, in the context

4    of a class action such as this one.  Although

5    plaintiffs survived defendants' motions to

6    dismiss, by and large, defendants would

7    likely have raised serious defenses at the

8    summary judgment phase as well as at trial,

9    if the case proceeded that far.  Many of

10   these issues were legally and factually

11   complex issues that militate in favor of

12   settlement.

13          Also, of course, this case had yet

14   to be certified as a class action, and

15   plaintiffs and defendants, obviously,

16   recognize that courts have not

17   uniformly certified a proposed class to all

18   claims in ERISA cases of this nature.

19          Also, the risks of establishing

20   damages are always complex and generally

21   recognized in the context of these types of

22   actions.  Very complex and require the

23   completion of full discovery and evaluation

24   of the relevant time period by the Court.

25          And there were questions as to

23

1    whether the losses alleged by plaintiffs

2    could be compensated under ERISA.  There were

3    questions as to the proper measure of

4    damages.  All of which, again, militated in

5    favor of settlement.

6         Had this case gone to trial, likely

7    there would have been a battle of experts.

8    Would be difficult for the parties to

9    anticipate the outcome or the decision that

10   would be made after hearing expert testimony

11   from both sides.

12        A third factor is the value of

13   immediate recovery.  The Tenth Circuit has

14   held that the value of immediate recovery is

15   simply the monetary worth of the settlement.

16   This settlement is for $9.25 million.  And

17   the Court agrees that this amount may well

18   have been in excess of what the class may

19   have obtained even through trial.  This

20   recovery is in addition to the payment the

21   plan will receive from the recovery garnered

22   in the securities litigation and

23   substantially increases the recovery for the

24   individual class members.

25        It is-- it is clear that continued

1   litigation would have been protracted,

2   complex, and expensive; requiring more

3   discovery; requiring the battle over class

4   certification; requiring hiring and vetting

5   and discovery of experts; and ultimately, of

6   course, the expenses and time associated if

7   this case went all the way to trial.

8          And then the final factor the Court

9   must look at is the judgment of the parties

10  that the settlement is fair and reasonable.

11  And I've heard from both parties that after

12  -- as Ms. Katz said -- protracted mediation

13  and negotiation and intense negotiation

14  advocacy, they are satisfied that the

15  settlement is fair and reasonable to all.

16          Both parties are represented by

17  nationally-known counsel with extensive

18  experience in ERISA class actions.  This has

19  been vetted by a third party.  It's been

20  mediated.  The Court is convinced that the

21  settlement is fair and reasonable.  Thus, the

22  settlement will be approved at this hearing

23  on final approval of settlement.

24          And now we'll turn to the motion for

25  award of fees, expenses, and contribution of

25

1    compensation to class members.

2              MR. MELTZER:   Thank you, Your Honor.

3    Your Honor, we put in an application

4    for award of attorneys' fees, reimbursement

5    of expenses and case contribution

6    compensation.  Our request is for 30 percent

7    of the settlement fund.  That amounts to

8    2.775 million, plus reimbursement of expenses

9    of $76,715.59, and a $1,000 award for each

10   named plaintiff for their contribution to

11   this case.

12             With respect to the request for

13   fees, there is a-- again, there's a test that

14   the Tenth Circuit employs to determine

15   whether-- whether the request is reasonable.

16   That-- that test is set out, among others, in

17   Brown v. Phillips Petroleum.  This test is

18   quite a bit longer than the test relating to

19   approval of the settlement so I'll try and

20   run through the factors as quickly as I can.

21   There are, I believe, 10 or so that apply

22   here.

23             First is the time and labor

24   required.  As the application states, Your

25   Honor, the class counsel has spent over 4,000

26

1   hours in prosecuting this case.  It was a

2   case that was heavily litigated both on the

3   litigation side as well as on the mediation

4   settlement front.

5           The lodestar in the case is a little

6   bit over $1.4 million.  That translates into

7   a multiplier, a lodestar multiplier, of 1.88.

8   I would submit that that is a very modest

9   multiplier.  In comparison, Your Honor, I

10  believe in the Westar securities case the

11  30 percent awarded by Your Honor, I believe

12  that amounted to something like a 3.9

13  multiplier.  So here it is far, far less.

14          The second factor is the novelty and

15  difficulty of the questions presented by the

16  case.  As we've stated in this hearing

17  before, ERISA is a difficult case-- ERISA is

18  a difficult statute to prosecute a case.

19  There are a lot of trapdoors in ERISA.  The

20  legal questions that get presented in a case

21  like this are complex.  They are novel and

22  they are developing.  And unless you practice

23  in it, it is a very difficult area of the law

24  to navigate correctly.

25          The third factor is somewhat related

1    to that -- the skill requisite to perform the

2    legal service properly.  Again, ERISA cases

3    are not easy.  When you build in a class

4    action component to them, they go from

5    complicated to extremely complicated.

6            It is difficult to present the case

7    properly both in pleadings as well as in what

8    were essentially summary trials during all of

9    these mediations.  Getting a damage analysis

10   that's credible and gives you a, you know,

11   hope for recovery is not easy.  Navigating

12   the statute and the legal issues that are

13   compounded by difficult issues of fact,

14   again, is not an easy proposition.

15           The fourth factor, the preclusion of

16   other employment by the attorneys due to

17   acceptance of the case.  As I stated

18   previously, we dedicated 4,000-- over 4,000

19   hours.  That obviously has an opportunity

20   cost that prevents us or precludes us from

21   working on other matters during the two-plus

22   years or almost three years of litigation

23   that we dedicated here.  I retract that.

24   Three-plus years of litigation here.

25           The-- whether the fee is fixed or

28

1    contingent is another factor.  Here, there

2    was no guarantee that we would receive

3    payment for anything.  I believe that is

4    particularly telling here because with Your

5    Honor's ruling on the motion to dismiss and

6    in a developing area of the law, there's no

7    certainty that you're going to overcome the

8    initial Rule 12 challenge.  Did not come

9    until September of 2005, several years into

10   the litigation, after we had expended a lot

11   of time and a lot of money in prosecuting

12   these claims.  So there was a great deal of

13   uncertainty, and there was certainly a fairly

14   large risk that we were going to get no

15   payment whatsoever.

16        The next factor is the amount

17   involved and the results obtained.  Your

18   Honor, it's a settlement for $9.25 million.

19   I believe it does substantially increase

20   recovery to the class members.  It is in

21   addition to the recovery that the plan will

22   make as part of the Westar securities case.

23   I believe it is an excellent result.  And I

24   believe that factor also supports the

25   requested fee.

29

```
1           The next factor is the experience,
2  reputation, and ability of the attorneys.  My
3  firm and-- my firm is an experienced--
4  Schiffrin & Barroway is an experienced class
5  action firm.  Mr. Pope and his firm, Ralston,
6  Pope & Diehl, are very experienced
7  litigators, especially in this particular
8  court.  We-- I'll leave the rest of it to the
9  papers so that I don't stand up and sort of
10 trumpet my success and abilities.
11           The next factor is the
12 undesirability of the case.  Your Honor, it's
13 not a difficult leap to say that an ERISA
14 class action to many practitioners would be
15 viewed as undesirable.  Sometimes my wife
16 feels the same way.  The desirability is--
17 frankly, when cases are easy and not so
18 complex, they become a lot easier to jump
19 into and dedicate your time and resources to.
20 But where they are difficult and complex, as
21 here, it becomes a little more of a-- a
22 little more of a challenge.  And, frankly, I
23 think that factor supports the requested fee
24 as well.
25           Awards in similar cases.  When you
```

30

1  look at what the multiplier is in this case,

2  I think it compares extremely favorably to

3  both awards in the Tenth Circuit in class

4  action cases -- I think that's a very modest

5  multiplier, the 1.88 -- as well as cases

6  across the country. I think you'll see

7  multipliers that are closer to three, four,

8  and five for this type of case. So I think

9  the requested fee compares very favorably.

10       The final point, Your Honor, is we

11  have no objections to the award of the fees

12  to the class, as unanimously endorsed in our

13  application.

14       The second component is for

15  expenses. We have expended $76,715.59. We

16  submitted an application to detail the

17  categories of expense. A lot of that is

18  discovery related. Much of-- some of that is

19  travel. It's travel related. There are also

20  copying expenses and the like. I think the

21  expenses, given the length of the case and

22  the complexity of the case, were minimal,

23  fortunately, because we were able to resolve

24  the case before we got further into expert

25  discovery. So resolving the case before we

31

1    went into really a deposition protocol and

2    before we started submitting summary judgment

3    papers helped keep expenses to a relative

4    minimum.

5              The final component of the

6    application is for case contribution awards.

7    We've asked for $1,000 apiece.  That is a low

8    amount relative to what awards have been in

9    other cases.  But essentially it recognizes

10   that there are quite a few named plaintiffs.

11   In fact, more in this case than in almost any

12   other that I've seen.  But the one thing I

13   will say for the named plaintiffs is they

14   were very active.  They played a big role

15   They were a large part of us being able to

16   hold the line in settlement negotiations.  I

17   think they did a really excellent job and

18   served the rest of the class very well.

19              THE COURT:  All right.  Thank you.

20              MR. MELTZER:  If you have any

21   questions, I'll be happy to address them.

22              THE COURT:  I don't.

23              Anyone else?

24              All right.  The so-called Johnson

25   factors that have been-- come from a Fifth

32

1    Circuit case but have been adopted in the

2    Tenth Circuit are those as outlined by

3    Mr. Meltzer.  In the Tenth Circuit the

4    percentage-of-recovery method has been

5    endorsed as an appropriate method for

6    determining an award of attorneys' fees in

7    these types of cases and in other types of

8    cases as well.

9         Based on the entire record, and

10   particularly the parties' pleadings

11   concerning these fees and expenses, I find

12   that the fees requested are reasonable.  The

13   expenses are also reasonable and customary.

14   And the compensation requested for the

15   members, the named plaintiffs, is also

16   reasonable.

17        Many of these factors have already

18   been addressed in summarizing the propriety

19   of the settlement that was approved.  But

20   I'll note further that there was extensive

21   time and labor involved in this case.  Over

22   4,000 combined hours in prosecuting the case

23   that culminated in the settlement.

24        As already addressed, the questions

25   legally and factually were novel and

33

```
1    difficult and complex.

2            Class counsel is experienced,

3    nationally recognized in this field, and had

4    the requisite skill necessary to perform the

5    legal services required in cases as complex

6    as this.

7            Based on the number of hours spent

8    over the last three-plus years, it's clear

9    that other employment was precluded to a

10   large degree by the attorneys that

11   represented the class.

12           The 30 percent request is in keeping

13   with the range of reasonable fee awards or

14   fee awards that have been found reasonable in

15   the Tenth Circuit.  And the multiplication

16   factor as well.

17           The-- as I've already addressed, the

18   $9.25 million settlement is very favorable to

19   the class.  Given the complexity of the legal

20   and factual issues, the need for protracted

21   and intense advocacy, it's fair to say that

22   this case would have been viewed as

23   undesirable, perhaps, to many.  And that

24   factor needs to be taken into account.

25           The nature and length of the
```

34

1    professional relationship with the client is

2    evident, given the length of time that has

3    been spent to date on this case taking it

4    through settlement.

5         Again, the 33 percent-- or, rather,

6    the 30 percent requested is in line with the

7    range of awards in similar cases in this

8    circuit, including the range of awards given

9    by this particular Court.

10        As far as the expenses, we've

11   reviewed those.  They appear to be reasonable

12   and customary expenses associated with

13   discovery and litigation and mediation.

14        And finally, with respect to the

15   request for $1,000 each as a case

16   contribution award to each of the 27 named

17   plaintiffs, I'll find that that is also

18   reasonable and appropriate, given the

19   litigation support that they provided over

20   the last three-plus years to class counsel to

21   the benefit of all other members of the

22   class.

23        So the motion for award of

24   attorneys' fees, reimbursement of expenses

25   and case contribution compensation is

1    granted.

2            You all had, I think, presented a

3    proposed order.  I think my law clerk talked

4    to you about some language that needed to be

5    changed.  And as soon as you can get that-- I

6    suppose we could change that, if need be, and

7    we can get this order out right away.

8            I do commend all of you.  I know

9    that you-- I know this was a difficult case

10   for everyone involved.  And I had some sense

11   of that deciding the motion to dismiss, how

12   difficult many of these-- all of these issues

13   really were.  So I do appreciate the obvious,

14   you know, commitment you all made to securing

15   a fair and reasonable settlement that, you

16   know, benefitted the members of the class and

17   benefitted the company.  And I know it took a

18   lot of work and a lot of intense lawyering.

19   And you all, obviously, did a very excellent

20   job in all respects.  So I commend you.  And

21   it's nice to have lawyers such as yourselves

22   appear in this court.  I look forward to

23   seeing you again someday in another complex

24   class action, no doubt.

25            MR. MELTZER:  Thank you, Your Honor.



36

1          THE COURT:  All right.  We'll be in

2    recess.

3                (THEREUPON, the hearing

4    concluded).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SHERRY A. BERNER
Official Court Reporter

37

```
1     UNITED STATES OF AMERICA  )
                                )   ss:
2     DISTRICT OF KANSAS        )

3

4                C E R T I F I C A T E

5

6          I, Sherry A. Berner, Certified Shorthand

7     Reporter in and for the State of Kansas, do

8     hereby certify that I was present at and

9     reported in machine shorthand the proceedings

10    had the 27th day of July, 2006, in the

11    above-mentioned court; that the foregoing

12    transcript is a true, correct, and complete

13    transcript of the requested proceedings.

14          I further certify that I am not attorney

15    for, nor employed by, nor related to any of

16    the parties or attorneys in this action, nor

17    financially interested in the action.

18          IN WITNESS WHEREOF, I have hereunto set

19    my hand and official seal at Topeka, Kansas,

20    this  2ND  day of  AUGUST        , 2006.

21

22                     _____
                       Sherry A. Berner
23                     Certified Shorthand Reporter

24

25
```

SHERRY A. BERNER
Official Court Reporter