**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MERRY F. SHANE, et al., | : | Civil Action No.: 3:10-cv-50089 |
| | : | (*Consolidated with Civil Action No.* |
| Plaintiffs, | : | *3:10-cv-50132*) |
| | : | |
| v. | : | Honorable Frederick J. Kapala |
| | : | |
| KENNETH E. EDGE, et al., | : | Mag. Honorable P. Michael Mahoney |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF**
**SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION**

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

Edward W. Ciolko, Esq.
Peter A. Muhic, Esq.
Mark K. Gyandoh, Esq.
Julie Siebert-Johnson, Esq.
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Lead Class Counsel*

**GAINEY McKENNA & EGLESTON**

Gregory M. Egleston, Esq.
440 Park Avenue South
5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383

*Co-Lead Class Counsel*

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................................3

        A.      Investigation of Claims and Plaintiffs' Complaints.................................3

        B.      The Claims Asserted on Behalf of the Plan ............................................4

        C.      Summary of the Litigation ......................................................................5

        D.      Settlement Negotiations ..........................................................................7

        E.      The Terms of the Proposed Settlement ...................................................8

        F.      Reasons for the Settlement......................................................................8

III.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR FINAL
        APPROVAL ...................................................................................................10

        A.      The Law Encourages Fair and Reasonable Settlements .......................10

                1.      The Strength of Plaintiffs' Case Compared to the Terms of the
                        Proposed Settlement.....................................................................12

                2.      The Likely Complexity, Length and Expense of Continued
                        Litigation.....................................................................................14

                3.      The Amount of Opposition to the Settlement Among Affected
                        Parties..........................................................................................16

                4.      The Absence of Collusion in Reaching the Settlement ............16

                5.      The Opinion of Competent Counsel ..........................................16

                6.      The Stage of the Proceedings and the Amount of Discovery
                        Completed ...................................................................................18

IV.     THE FORM AND METHOD OF NOTICE SATISFY DUE PROCESS ........................19

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE
        TO SETTLEMENT CLASS MEMBERS ...............................................................22

VI.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS............24

        A.      The Proposed Settlement Class Satisfies the Requirements of Federal Rule
                23(a) .......................................................................................................25

1.    Numerosity.........................................................................................25

2.    Commonality......................................................................................26

3.    Typicality...........................................................................................27

4.    Adequacy of Representation .....................................................27

B.    The Settlement Class May be Properly Certified Under Rule 23(b)(1).................28

1.    Certification Under Rule 23(b)(1)(B) is Most Appropriate......................28

2.    Certification Under Rule 23(b)(1)(A) is also Proper ................................29

3.    Proposed Co-Lead Class Counsel Satisfy Rule 23(g)...............................30

V.    CONCLUSION................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re Advanta Corp. ERISA Litig.*,
    No. 09-cv-04974 (E.D. Pa. June 4, 2010) ..............................................................17

*In re "Agent Orange" Product Liability Litig. MDL No. 381*,
    818 F.2d 179 (2d Cir. 1987) ...............................................................................22

*AIG v. ACE INA Holdings, Inc.*,
    No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ......................................12, 16, 18

*Alford v. United Community Banks, Inc.*,
    No. 11-cv-309 (N.D. Ga. Jan. 31, 2013) ...............................................................10

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1977) ........................................................................................11

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    Nos. 07-cv-2898, 09-cv-2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ........11, 12, 16, 18

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
    446 F.3d 728 (7th Cir. 2006) ..................................................................10, 16, 18

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................22, 28

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
    No. MDL 2147, 2011 WL 2204584 (N.D. Ill. June 2, 2011) .....................................21

*In re Beazer Homes USA, Inc. ERISA Litig.*,
    No. 07-cv-00952 (N.D. Ga. Apr. 30, 2007) .........................................................17

*Brieger v. Tellabs, Inc.*,
    245 F.R.D. 345 (N.D. Ill. 2007) .......................................................................26, 27

*Brieger v. Tellabs, Inc.*,
    659 F. Supp. 2d 967 (N.D. Ill. 2009) ...................................................................1, 13

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
    286 F.R.D. 621 (W.D. Okla. 2012) ...................................................................17

*Cima et al. v. Wellpoint Health Networks, Inc. et al.*,
    250 F.R.D. 374 (S.D. Ill. 2008) ........................................................................28

*Curtiss-Wright Corp. v. Helfand*,
    687 F.2d 171 (7th Cir. 1982) ...............................................................................22

*Dalton et al. v. Old Second Bancorp, Inc. et al.*,
    No. 11-cv-01112 (N.D. Ill. Sept. 20, 2011) ...........................................................29

*Dann v. Lincoln Nat'l Corp.*,
    No. 08-cv-5740 (E.D. Pa. June 4, 2009) ................................................................17

*DiFelice v. U.S. Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed*, 497 F.3d 410 (4th Cir. 2007) ......................13

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ...............................................................................12

*Donovan v. St. Joseph County Sheriff*,
    No. 11-cv-133, 2012 WL 1601314 (N.D. Ind. May 3, 2012) ...................................30

*Dusenbery v. U.S.*,
    534 U.S. 161 (2002).............................................................................................21

*Gen Tel Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).............................................................................................26

*George v. Kraft Foods Global*,
    270 F.R.D. 355 (ND. Ill. 2010)...............................................................25, 27, 28

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................14

*Great Neck Capital Appreciation Inc. Partnership, L.P. v. PricewaterhouseCoopers, LLP*,
    212 F.R.D. 400 (W.D. Wis. 2002)...................................................................10, 22

*Grosick v. Nat'l City Corp.*,
    No. 08-cv-00144 (N.D. Ohio Jan. 17, 2008) ........................................................17

*Hargrove v. Eaglepicher Corp.*,
    No. 10-cv-10946, 2012 WL 1668152 (E.D. Mich. May 10, 2012) .........................15

*Harris v. First Regional Bancorp*,
    No. 10-cv-07164 (C.D. Cal. Jan. 26, 2011) ..........................................................17

*Heekin v. Anthem, Inc.*,
    No. 05-cv-01908, 2012 WL 5472087 (S.D. Ind. Nov. 9, 2012) .............................22

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ...............................................................................10

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................23

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ....................................................................11, 15

*Lanfear v. Home Depot, Inc.*,
   679 F.3d 1267 (11th Cir. 2012) .......................................................................9

*Langraff v. Columbia Healthcare Corp.*,
   No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831 (M.D. Tenn. May 24, 2000) ........................13

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) ..............................................................23

*In re Lear ERISA Litig.*,
   No. 06-cv-11735 (E.D. Mich. Apr. 10, 2006) .......................................................17

*Loomis v. Exelon Corp.*,
   No. 06-cv-4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007) .................................29

*Maley v. DelGlobal Techs. Corps.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................12

*Mars Steel Corp. v. Continental Ill. Nat'l. Bank & Trust Co. of Chicago*,
   834 F.2d 677 (7th Cir. 1987) ..........................................................................12

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) ....................................................................26

*McDonald v. Chicago Milwaukee Corp.*,
   565 F.2d 416 (7th Cir. 1977) ..........................................................................12

*In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litig.*,
   MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009).....................................29

*Mirfasihi v. Fleet Mortg. Corp.*,
   450 F.3d 745 (7th Cir. 2006) ..........................................................................11

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995)........................................................................9, 10

*Neil v. Zell*,
   275 F.R.D. 256 (N.D. Ill. 2011).................................................................25, 29

*Nelson v. IPALCO Enterprises, Inc.*,
   480 F. Supp. 2d 1061 (S.D. Ind. 2007) ..........................................................13

*Nelson v. Ipalco Enterprises, Inc.,*
   No. 02-cv-477, 2005 WL 1924332 (S.D. Ind. Aug. 11, 2005)...............................................15

*Northside Chiropractic, Inc. v. Yellowbook, Inc.,*
   No. 09-cv-4468, 2012 WL 3777010 (N.D. Ill. Aug. 29, 2012) .........................................27, 28

*Nowak v. Ford Motor Co.,*
   240 F.R.D. 355 (E.D. Mich. 2006) .......................................................................................17

*Oshana v. Coco-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006) ...............................................................................................27

*Outten v. Wilmington Trust Corp.,*
   281 F.R.D. 193 (D. Del. 2012) ............................................................................................18

*Puffer v. Allstate Ins. Co.,*
   675 F.3d 709 (7th Cir. 2012) ...............................................................................................25

*In re R.H. Donnelley Corp. ERISA Litig.,*
   No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012) ...........................................................................13

*In re R.H. Donnelley ERISA Litig.,*
   No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010).........................................................................17

*Retired Chicago Police Ass'n v. City of Chicago,*
   7 F.3d 584 (7th Cir. 1993) ...................................................................................................28

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP,*
   No. 97-cv-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)..............................................23

*Rogers v. Baxter Int'l. Inc.,*
   No. 04-cv-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) ..............................................29

*In re Schering Plough Corp. ERISA Litig.,*
   420 F.3d 231 (3d Cir. 2005)...................................................................................................9

*In re Schering Plough Corp. ERISA Litig.,*
   589 F.3d 585 (3d Cir. 2009)...........................................................................................25, 29

*In re Sears, Roebuck & Co. ERISA Litig.,*
   No. 02-cv-8324, 2006 WL 1593902 (N.D. Ill. Feb. 15, 2006) ..............................................29

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   130 U.S. 1431 (2010).............................................................................................................25

*In re: SLM Corp. ERISA Litig.,*
   No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008)...........................................................................17

*Smith v. Aon Corp.*,
   238 F.R.D. 609 (N.D. Ill. 2006) ............................................................................................29

*Smith v. Krispy Kreme Doughnut Corp.*,
   No. 05-cv-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ............................................13

*Summers v. UAL Corp. ESOP Comm.*,
   No. 03-cv-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .............................................22

*In re SunTrust Banks, Inc. ERISA Litig.*,
   No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) ..............................................................................17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ..........................................................................................11, 12

*Taveras v. UBS et al.*,
   No. 12-1662, 2013 WL 692535 (2d Cir. Feb. 27, 2013) .........................................................9

*Wal-mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ...........................................................................................................26

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ..............................................................................14, 15

**STATUTES**

29 U.S.C. § 1001 .........................................................................................................................1, 4

29 U.S.C. § 1109 .............................................................................................................................5

29 U.S.C. § 1024(b)(4) ...........................................................................................................3, 7, 19

29 U.S.C. § 1132(a)(2) .....................................................................................................................5

**RULES**

FED. R. CIV. P. 23(a)(1) ..................................................................................................................26

FED. R. CIV. P. 23(a)(2) ..................................................................................................................26

FED. R. CIV. P. 23(a)(3) ..................................................................................................................27

FED. R. CIV. P. 23(a)(4) ............................................................................................................27, 28

FED. R. CIV. P. 23(b)(1) ................................................................................................24, 25, 28, 29

FED. R. CIV. P. 23(b)(1)(A) ......................................................................................................25, 29

FED. R. CIV. P. 23(b)(1)(B) ..................................................................................................25, 28, 29

FED. R. CIV. P. 23(c)(2)..................................................................................................21

FED. R. CIV. P. 23(e).....................................................................................................11

FED. R. CIV. P. 23(g) ..........................................................................................17, 28, 30

Plaintiffs Merry F. Shane, Michelle Kretsinger, and Keith Kretsinger (collectively "Named Plaintiffs" or "Plaintiffs"), participants in the Amcore Financial Security Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for an Order (i) granting final approval of the Class Action Settlement (the "Settlement"), (ii) certifying the Settlement Class, and (iii) approving the proposed Plan of Allocation, all of which this Court preliminarily approved by Order dated January 15, 2013 [Dkt. No. 96] (the "Preliminary Approval Order").[1]

## I.    INTRODUCTION

The Settlement provides for a Class Settlement Amount of $3,350,000.00, which will provide substantial benefits to members of the Settlement Class. The proposed Settlement, achieved after nearly three years of litigation, is an excellent result for the Plan and its participants given the unpredictable outcome of litigation and the possibility that the Plan, and its participants, might not see any recovery until after a lengthy appellate process. To be sure, lawsuits of this type brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et seq.*, ("ERISA") face significant litigation and trial risks. Co-Lead Class Counsel, Kessler Topaz Meltzer and Check, LLP ("KTMC"), tried an analogous case to verdict – *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009) – and thus is in a unique position to realistically evaluate the risks of continued litigation. The Settlement will resolve this Action in

---

[1]    The terms of the Settlement are set forth in the Settlement Agreement dated January 10, 2013 (the "Settlement Agreement") which was previously filed with the Court [Dkt. No. 169-2], and is attached to the Joint Declaration of Mark K. Gyandoh and Gregory M. Egleston in Support of Plaintiffs' Unopposed Motions For Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation (the "Final Approval Motion") and For Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to the Named Plaintiffs (the "Fee Motion") ("Joint Declaration" or "Joint Decl.") as Exhibit 1. All capitalized terms not defined herein are defined in the Settlement Agreement.

its entirety, including the claims or proposed claims against each of the Defendants[2] arising out of alleged breaches of fiduciary duty under ERISA. The Settlement achieves, to a significant degree, the relief sought by this litigation: the recovery of losses to Plan assets invested in the common stock of Amcore.

The lawsuit, which was filed on April 14, 2010, sought to obtain compensatory and affirmative injunctive relief based on allegations that Defendants, among other things: (1) allowed investments of retirement assets of the Plan in the Amcore Stock Fund (the "Fund") when such investments were imprudent; and (2) failed to take appropriate action to protect the Plan's assets invested in the Fund or the Fund's assets invested in Amcore as the Company spiraled into bankruptcy and Amcore Stock became worthless.

The Settlement provides cash consideration to the Plan for distribution to participants in the amount of $3,350,000.00. The Settlement was the product of litigation in this Court and the Bankruptcy Court for the Northern District of Illinois, Eastern Division, followed by extensive arm's-length negotiation and mediation. There were nearly three years of litigation and discovery, including the review by Class Counsel[3] and their consulting experts of voluminous

---

[2] "Defendants" refers, collectively, to the Advisory Committee of the Amcore Financial Security Plan, Kenneth E. Edge, William R. McManaman, Paula A. Bauer, Paul Donovan, Teresa Iglesias-Solomon, John A. Halbrook, Frederick D. Hay, Stephen S. Rogers, John W. Gleeson, Jack D. Ward, Lori M. Burke, Judith Carrè Sutfin, Donald H. Wilson, Russell Campbell, Eleanor Doar, Guy Francesconi, Richard E. Stiles, Thomas Szmanda, James S. Waddell, and Gary Watson. Amcore Financial, Inc. ("Amcore" or the "Company") initially was named as a defendant but was not named in Plaintiffs' Consolidated Class Action Complaint for Violations of the Employee Retirement Income Security Act (Dkt. No. 55) following Amcore's filing for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division on August 19, 2010.

[3] "Class Counsel" means KTMC, the Egleston Law Firm (now known as Gainey McKenna & Egleston ("GME")), and Meyer & Horning, P.C. The term "Co-Lead Class Counsel" is used herein to refer to KTMC and GME.

2

pages of Plan-related documents. To date, no Plan participant has objected to the proposed Settlement.[4]

The proposed Settlement satisfies the factors for final approval of class action settlements set forth under established Seventh Circuit precedent, which are discussed in detail herein. Resolving this case at this juncture allows the Parties to avoid years of litigation that would deplete available insurance coverage and could result in a judgment or verdict that is less than the recovery under the Settlement Agreement, or even no recovery at all. As the parties informed the Court at the preliminary approval hearing, at the time of Settlement only about $4 million in proceeds remained in the applicable insurance policy which was a wasting policy (*i.e.*, the policy also paid for defense and other costs). *See* Preliminary Approval Hearing Tr. at 11-13 (attached as Exhibit 3 to the Joint Declaration).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Investigation of Claims and Plaintiffs' Complaints

Before filing their initial complaints in this matter, Co-Lead Class Counsel reviewed voluminous public records regarding the Company, consulted with experts, reviewed relevant and recent case law, and considered potential legal claims. Prior to filing their Consolidated Class Action Complaint for Violations of the Employee Retirement Income Security Act (the "Complaint") (Dkt. No. 55), Plaintiffs' additional investigation included, but was not limited to: (i) review of documents produced by Defendants, including Plan-related documents in response to Plaintiffs' request for such documents pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4); (ii) review of publicly-available materials relating to the Company and the Plan; (iii) analysis of

---

[4]     The deadline for objecting to the Settlement has not yet elapsed. Per the Preliminary Approval Order, objectors have until April 19, 2013 to file objections. To the extent objections are filed, Class Counsel will submit a supplemental brief to the Court prior to the Final Approval Hearing addressing these objections.

specific corporate transactions; and (iv) interviews of Plan participants. Co-Lead Class Counsel's efforts in thoroughly investigating Plaintiffs' claims enabled them to identify as Defendants the persons or entities believed to have discretionary fiduciary authority or control over the Plan and the Plan's assets. As a result, the Complaint thoroughly details Defendants' operations of the Company and the administration of the Plan.

### B. The Claims Asserted on Behalf of the Plan

Plaintiffs assert claims derivatively on behalf of the Plan, themselves and other similarly situated Plan participants. Plaintiffs allege in Count I that certain Defendants, each having responsibilities regarding the management and investment of Plan assets, breached their fiduciary duties to the Plan, to Plaintiffs and the proposed Class by failing to prudently and loyally manage the Plan's investment in Company securities by, *inter alia*, continuing to offer Amcore Stock as a Plan investment option when it was imprudent to do so. Plaintiffs allege that these actions or inactions run directly counter to the express purpose of ERISA plans. *See* ERISA § 2, 29 U.S.C. § 1001.

Plaintiffs allege in Count II that certain Defendants failed to avoid or ameliorate inherent conflicts of interests which precluded them from functioning as independent, "single minded" fiduciaries with only the Plan's and its participants' best interests in mind. Lastly, Plaintiffs allege in Count III that certain Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management and administration of Plan assets was delegated, despite the fact that such Defendants knew or should have known that other fiduciaries were imprudently allowing the Plan to continue offering Amcore Stock as an investment option and investing Plan assets in Amcore Stock when it was no longer prudent to do so.

4

Defendants deny Plaintiffs' allegations in their entirety, maintain that their actions were in all respects legal and proper, and have vigorously defended these claims.

### C.    Summary of the Litigation

On April 14, 2010, Plaintiff Shane filed her class action complaint against Amcore and certain Amcore directors, officers and employees alleging various claims under ERISA relating to the Plan's investment in Amcore Stock (*Shane v. Amcore Fin'l, et al.*, No. 10-cv-50089). Shortly thereafter, on May 24, 2010, Plaintiffs Michelle Kretsinger and Keith Kretsinger filed their ERISA action styled *Michelle Kretsinger and Keith Kretsinger v. Amcore Fin'l, Inc., et al.*, No. 10-cv-50132, against all Defendants named in the *Shane* action, and also Defendants Edge and Burke.  On June 30, 2010, the Court consolidated the *Shane* and *Kretsinger* matters under the *Shane* docket. *See* Dkt. No. 15.

On August 19, 2010, Amcore filed a Chapter 11 petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 10-37144 (the "Bankruptcy Action").  Counsel for the Plaintiffs actively participated in the Bankruptcy Action to secure important protections for Plaintiffs and the Plan.  Specifically, on September 8, 2010, the Kretsingers filed a proof of claim asserting a claim on behalf of themselves, the Plan, and all other similarly situated Plan participants, pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  Plaintiff Shane filed a similar proof of claim on September 13, 2010.  Co-Lead Class Counsel retained bankruptcy counsel to ensure the interests of Plaintiffs, the Plan, and the proposed Class were protected in the Bankruptcy Action. Additionally, Co-Lead Class Counsel negotiated with Amcore's bankruptcy counsel and were able to obtain significant benefits and/or concessions from Amcore to be included within a Modified Plan of Liquidation and Proposed Conformation Order, including, *inter alia*:  (a) an

express agreement by Amcore and the Liquidation Trust Administrator to preserve all relevant Amcore documents, including electronic data, for at least three years and thereafter, providing for destruction only as authorized by the Bankruptcy Court or another court of competent jurisdiction after a hearing and after notice is provided to Plaintiffs; (b) a complete carve-out for any and all ERISA claims asserted in the *Kretsinger* case against any non-debtor defendant from any third party release in the Modified Plan of Liquidation; and (c) a provision for the timely lifting of the automatic stay of litigation with regard to Plaintiffs' ERISA claims against Amcore, including discovery. On December 15, 2010, the Honorable Susan Pierson Sonderby, who presided over the Amcore Bankruptcy Action, confirmed the Modified Plan of Liquidation, including the protections negotiated by Plaintiffs.

On March 24, 2011, the Court appointed KTMC (then known as Barroway Topaz Kessler Meltzer & Check, LLP) and GME (then known as the Egleston Law Firm) as Interim Co-Lead Counsel for Plaintiffs in the consolidated matter. Dkt. No. 42. On August 5, 2011, Plaintiffs filed their Complaint. Dkt. No. 55. The Complaint did not name Amcore as a defendant due to Amcore's filing for bankruptcy protection. On September 19, 2011, Defendants filed a motion to dismiss and a motion to strike Plaintiffs' jury demand. Dkt. No. 59. During the pendency of the briefing on Defendants' motions, the Parties agreed to stay this Action to allow an opportunity to engage in settlement discussions.

Because a decision was never entered on Defendants' motion to dismiss, formal discovery did not commence in the Action. Nevertheless, on May 16, 2011, the Parties reached an agreement which permitted Plaintiffs to pursue limited discovery from Harris Bank, National Association ("Harris"), the entity that acquired Amcore Investment Group (the Plan's trustee and recordkeeper). Dkt. No. 46. Upon Harris' acquisition of Amcore Investment Group, Harris took

physical custody of most Plan-related documents. Plaintiffs were able to obtain certain Plan-related documents from Defendants through Plaintiffs' letter request pursuant to ERISA Section 104(b)(4). However, in order to obtain other documents in the possession of Harris that pertained to the operation of the Plan, the Parties negotiated an agreed motion permitting Plaintiffs to conduct limited discovery of Harris. Pursuant to this agreement, Co-Lead Class Counsel served multiple subpoenas and further negotiated extensively with Harris in order to obtain the information necessary to effectuate the Settlement, including all available Plan transaction data. The Parties also negotiated the terms of a stipulated protective order, which the Court entered on August 8, 2011. Dkt. No. 56.

**D.    Settlement Negotiations**

The settlement negotiations in this Action were intense and conducted at arm's-length. On March 15, 2012, the Parties participated in a full-day mediation session before the former Chief Judge of the United States District Court for the Eastern District of Pennsylvania, the Honorable Edward N. Cahn (U.S.D.J., Ret.), an independent mediator highly experienced in ERISA litigation. In advance of that session, the Parties submitted extensive written, confidential mediation memoranda to Judge Cahn, and Co-Lead Class Counsel consulted with appropriate experts concerning damages and liability issues. During the mediation, the Parties engaged in spirited debate as to critical legal and factual issues concerning liability and damages. Only after a full day of debate and negotiations, did counsel for Plaintiffs and Defendants reach an agreement as to the principal terms and conditions for the settlement of this Action.

Throughout the mediation process, Co-Lead Class Counsel were fully informed of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. The arm's-length nature of the negotiations, the participation of experienced advocates for the Parties, and the

7

involvement of a well-respected mediator who is well-versed in ERISA jurisprudence, all strongly support the conclusion that the proposed Settlement is fair, reasonable and adequate.

####     E.     The Terms of the Proposed Settlement

In exchange for dismissal of this Action, release of claims and entry of the Judgment as provided for in the Settlement Agreement, Defendants will pay or cause to be paid to the Plan the sum of $3,350,000.00. Net of the costs of the Settlement, the Court-approved attorneys' fees and expenses, and any Case Contribution Awards to Named Plaintiffs, this sum will be distributed to Plan's participants pursuant to the proposed Plan of Allocation.[5]

####     F.     Reasons for the Settlement

Plaintiffs have entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of their claims, which are based on Co-Lead Class Counsel's extensive experience with ERISA litigation, the investigation performed in connection with the filing of the initial complaints and the Complaint, and the additional facts obtained during the course of litigation and discovery. As noted, Co-Lead Class Counsel reviewed relevant case law, researched legal claims, and reviewed voluminous public records along with documents produced by Defendants and Harris. Plaintiffs were fully informed of the material conditions of the Plan and all pertinent Plan-related communications. Plaintiffs reviewed Plan documents, Plan educational materials, Plan prospectuses, Summary Plan Descriptions as well as the Plan's insurance information.

Co-Lead Class Counsel, in negotiating the proposed Settlement, considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, which were debated during the mediation process. In addition to Defendants' pending

---

[5]     The Plan of Allocation is attached to the Joint Declaration as Exhibit 2.

motion to dismiss the Complaint, Defendants have and certainly would continue to argue in dispositive motions or at trial that the Action lacks merit. Indeed, while Defendants filed a memorandum in support of the Settlement (*see* Dkt. 94-1), their memorandum articulated some of the defenses they would raise against Plaintiffs' claims, including that Plaintiffs could not overcome a presumption of prudence which Defendants contend is applicable to Defendants' conduct. *See, e.g.*, Dkt. 94-1, at 1-2.

Certainly, Plaintiffs would have ready responses to each of these arguments. First, the Seventh Circuit has not adopted any presumption of prudence standard. Second, even if the Seventh Circuit adopted it, Plaintiffs' position is that the presumption of prudence is only applicable, where, unlike here, plan language mandates investment in company stock. *See, e.g.*, *Taveras v. UBS et al.*, No. 12-1662, 2013 WL 692535, at *8 (2d Cir. Feb. 27, 2013) (rejecting the notion that a presumption of prudence applied to the fiduciaries' conduct where company stock was not a mandated investment option for the retirement plan); *In re Schering Plough Corp. ERISA Litig.*, 420 F.3d 231, 238 n.5 (3d Cir. 2005) (Third Circuit found its "*Moench*[6] decision inapposite [where] fiduciaries [are] 'simply permitted to make … investments' in 'employer securities.'"). Third, to the extent a court found the Plan's language mandated investment in Company stock, Plaintiffs believe that the Seventh Circuit would follow the lead of other Circuits which have found that to overcome the presumption of prudence, a plaintiff need not allege that the company is on the brink of "impending collapse." *See, e.g., Lanfear v. Home Depot, Inc.,* 679 F.3d 1267, 1280 (11th Cir. 2012). As one court recently recognized/reasoned, such a standard is untenable anyway, because "a fiduciary would never be able to stop investing in company stock if there was *any* hope, however, slim, that a company would survive times of severe financial turmoil, even if its stock price would never fully

---

[6]    *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).

recover." *Alford v. United Community Banks, Inc.*, No. 11-cv-309, slip op. at 22 (N.D. Ga. Jan. 31, 2013) (emphasis in original). Moreover, the Seventh Circuit has unambiguously stated that 'it is … the fiduciary's responsibility… to screen investment alternatives and to ensure that imprudent options are not offered to plan participants." *Howell v. Motorola, Inc.*, 633 F.3D 552, 567 (7th Cir. 2011). As the Seventh Circuit recognized in *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728 (7th Cir. 2006):

> A[n ERISA] trustee must discharge his duties 'with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.' 29 U.S.C. § 1104(a)(1)(B) (emphasis added); *see also Moench v. Robertson*, . . . 62 F.3d at 572-73. A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

*Id.* at 734 (emphasis in original). In any event, given that here Amcore did collapse, Plaintiffs believe they would rebut any presumption of prudence adopted by the Seventh Circuit. However, there is no assurance that Plaintiffs would prevail if litigation were to continue – much less, that they would recover more than $3,350,000.00.

In sum, based upon their extensive investigation, analysis of the risks inherent in continuing litigation and establishing liability and damages, as well as likely appeals associated with any trial verdict, Co-Lead Class Counsel unequivocally support the proposed Settlement.

## III.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

### A.   The Law Encourages Fair and Reasonable Settlements

There is an initial strong presumption that a proposed representative ERISA action settlement is fair and reasonable when it is the result of arm's length negotiations. *Great Neck Capital Appreciation Inc. Partnership, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400,

410 (W.D. Wis. 2002); *see also Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Nevertheless, district courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

Rule 23(e) of the Federal Rules of Civil Procedure allows for the settlement, voluntary dismissal, or compromise of a certified class action "only with the court's approval." FED. R. CIV. P. 23(e); *see also Amchem Products Inc. v. Windsor*, 521 U.S. 591, 617 (1977). To grant its approval, the Court must find that the settlement is "fair, reasonable, and adequate." *Synfuel*, 463 F.3d at 652. In its analysis, a court is advised to consider the following factors: (1) the strength of plaintiff's case on the merits, balanced against the settlement amount; (2) the likely complexity, expense and duration of further litigation; (3) the amount of opposition to the settlement; (4) evidence of collusion in reaching the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. *See American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-cv-2898, 09-cv-2026, 2011 WL 3290302, at *5 (N.D. Ill. July 26, 2011) ("*AIG*") (citing *Synfuel*, 463 F.3d at 652); *see also Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (factors to consider include (1) the probability of plaintiff prevailing on its various claims, (2) the expected costs of future litigation, and (3) hints of collusion). As the *Synfuel* Court noted, "[t]he 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653 (quotation omitted).

11

In conducting this analysis, the Court should consider the range of possible outcomes and the value of continued litigation to the interested parties who would be bound by the settlement. *Synfuel*, 463 F.3d at 653 (citation omitted). On final approval, "[t]he temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Mars Steel Corp. v. Continental Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987). "The very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 426 (7th Cir. 1977). A settlement is fair to the plaintiffs in a substantive sense "if it gives them the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp.*, 834 F.2d at 682.

The proposed Settlement here is the result of lengthy, contentious and complex arm's-length negotiations between the Parties. Moreover, counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented, and it is Co-Lead Class Counsel's opinion that the proposed Settlement is an excellent result for the Plan's participants.

### 1. The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement

As the *AIG* court noted, "'[i]n evaluating the strengths of the case, an important consideration is the various risks and costs that accompany continuation of the litigation.'" *AIG*, 2011 WL 3290302, at \*6 (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). In this Action, there would be substantial risks and costs if the litigation continued. While Co-Lead Class Counsel believe that Plaintiffs would defeat Defendants' motion to dismiss and ultimately would prevail at trial, they recognize that ultimate success is not assured and believe that this substantial Settlement, when viewed in light of the risks of proving liability and the recoverable damages, is unquestionably fair, reasonable, and adequate. *See Maley v. DelGlobal Techs. Corps.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("while plaintiffs believe

12

there is substantial evidence to support their claims, the complexities and uncertainties of this litigation nevertheless warrant the approval of the [s]ettlement").

Prior to entering into the Settlement, Co-Lead Class Counsel carefully considered the risks of continuing with litigation and the inherent delay in any payment to the class if the claims were litigated to conclusion. Co-Lead Class Counsel are mindful of the intrinsic difficulty of establishing liability and damages in this ever evolving area of ERISA law, and the obstacles to recovery posed by Defendants' possible defenses in this type of case. *See, e.g., Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (recognizing that "ERISA law is a highly complex and quickly-evolving area of the law" as a factor supporting the proposed settlement).

While Plaintiffs are confident in their case, success can never be guaranteed. The few trials in ERISA company stock fund actions have resulted in verdicts favoring defendants.[7] Co-Lead Class Counsel realistically evaluated the risks of proceeding to trial and the Parties agreed to the proposed Settlement only after vigorous arm's-length negotiations by experienced counsel on both sides following a full day mediation session. The negotiated cash settlement in the amount of $3,350,000.00 provides a meaningful recovery to the Settlement Class and is an exceptional result. Indeed, Co-Lead Class Counsel KTMC recently obtained final approval of a settlement in directly analogous matter within the same settlement range. *See In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571, Final Judgment And Order, at 5 (N.D. Ill. Nov.

---

[7]     To the best of Plaintiffs' knowledge, only four ERISA company stock cases have been tried on the merits: *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), *affirmed*, 497 F.3d 410 (4th Cir. 2007) (The Fourth Circuit affirmed the district court's ruling that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Nelson v. IPALCO Enterprises, Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007) (Court determined Defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option.); *Langraff v. Columbia Healthcare Corp.*, No. 98-cv-0090, 2000 U.S. Dist LEXIS 21831 (M.D. Tenn. May 24, 2000) (same); and *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009) (same).

14, 2012) (finding settlement payment of $2,125,000 was "fair, reasonable, and adequate, and is in the best interest of the settlement class").

Once approved, the Class Settlement Amount will be allocated to each Settlement Class Member's account pursuant to the Plan of Allocation (discussed in Section V, *infra*). Weighing the prospect of securing a guaranteed benefit for the Settlement Class against the uncertainty of continued litigation of heavily disputed claims, Co-Lead Class Counsel believe the Settlement is eminently fair and reasonable and should be approved.

### 2. The Likely Complexity, Length and Expense of Continued Litigation

The Settlement in this Action comes at an opportune time given that, if the litigation continues, there will be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice. As noted *supra*, the Action was stayed by this Court in November 2011, before the briefing related to Defendants' motion to dismiss and motion to strike jury demand was completed. In addition to completing the briefing and argument related to those motions, there also would be the contested issue of class certification, and subsequent dispositive motions. Further, the Parties would need to complete substantial discovery, involving tremendous expenses, as well as numerous depositions including of the Named Plaintiffs, various Defendants, fact witnesses, and liability and damages experts.

Moreover, a trial in this Action would be complex given the factual and legal issues relevant to Defendants' decision to continue offering Amcore Stock as a Plan investment option during the Class Period and Plaintiffs' arguments as to why such conduct was imprudent. *See In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1001 (D. Minn. 2005) (ERISA breach of fiduciary duty cases characterized by the court as "an area of developing and controversial law"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 n. 13

(S.D.N.Y. 2004) (ERISA claims "implicat[e] a rapidly developing, and somewhat esoteric, area of law.").[8]

Further, even if Plaintiffs prevailed at trial after continued litigation, it could be years before any putative class member received any benefit in light of the likely appeals to follow. Any delay of the Plan's potential recovery would further reduce its value. Proceeding through trial and the likely subsequent appeals would also undoubtedly require a further significant investment of time and resources by the Parties. As the Seventh Circuit recognized, the prospect of long and complex litigation weighs in favor of settlement approval. *See Isby*, 75 F.3d at 1199-1200 (settlement of litigation that "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time" represented "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial."); *see also In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1001 (D. Minn. 2005) (noting "this area of ERISA law is in its developmental stages. . . . In short, plaintiffs faced many risks with no guarantee of success").

Weighing the prospect of securing a guaranteed benefit for the Settlement Class against the uncertainty of continued, costly, and time consuming litigation further supports approval of the Settlement. The Settlement cuts short months of contested discovery, and eliminates the time and expense of the substantial motion practice, trial and appeals that would likely occur going forward in this case. Thus, the Settlement conserves judicial resources and reduces the expense associated with the significant discovery and briefing required to prepare Plaintiffs' case for trial.

---

[8] *See also Hargrove v. Eaglepicher Corp.*, No. 10-cv-10946, 2012 WL 1668152, at *2 (E.D. Mich. May 10, 2012) ("An ERISA case involves highly-specialized and complex areas of law"); *Nelson v. Ipalco Enterprises, Inc.*, No. 02-cv-477, 2005 WL 1924332, at *3 (S.D. Ind. Aug. 11, 2005) (finding "the important and complex area of law implicated by plaintiffs' [ERISA] claims is neither mature nor uniform").

### 3. The Amount of Opposition to the Settlement Among Affected Parties

On February 14, 2013, Co-Lead Class Counsel caused the Class Notice to be distributed to the Settlement Class. To date, there have been no objections to the Settlement.[9] However, the Plaintiffs, who are Settlement Class Members, approve and support the Settlement.

### 4. The Absence of Collusion in Reaching the Settlement

The Settlement with Defendants was the result of intense negotiations, including an all-day mediation session before the Hon. Edward N. Cahn (U.S.D.J., Ret.), which entailed numerous rounds of conversations with the mediator and negotiations with counsel for Defendants. Settlement discussions between the Parties were fully informed as a result of the factual discovery and by briefing and memoranda prepared by the parties on contested legal issues. The negotiations were vigorous and both sides argued their respective positions strenuously. The resulting Settlement was undeniably the product of arm's-length bargaining.

### 5. The Opinion of Competent Counsel

The opinion of competent counsel further supports approval of a settlement. As the *AIG* court recognized, "[t]he court is 'entitled to rely heavily on the opinion of competent counsel.'" *AIG*, 2011 WL 3290302, at *8 (citing *Armstrong*, 616 F.2d at 325). Co-Lead Class Counsel in this Action have substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this Action, litigating numerous similar ERISA class action cases.[10] Thus, Co-Lead Class Counsel are in a unique position to weigh the risks and benefits of continued litigation of this Action.

KTMC, headed by Joseph H. Meltzer, chair of the ERISA Litigation Department, and his partners Edward W. Ciolko and Peter A. Muhic, are highly qualified ERISA class action

---

[9]    As noted above, the deadline for objecting to the Settlement is April 19, 2013.

[10]    *See also* Memorandum in support of the Fee Motion at pages 14-18; *infra* Section VI.B.3 .

attorneys and unequivocally recommend this Settlement.[11] KTMC has been named Lead or Co-Lead Counsel in numerous breach of fiduciary class actions across the nation.[12] Recently, in appointing KTMC interim lead class counsel in another ERISA breach of fiduciary duty class action, a fellow district court stated:

> [T]he Court finds that KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary class actions. Further, KTMC's litigation efforts have resulted in favorable court opinions in a number of ERISA decisions denying motions to dismiss and motions for summary judgment. KTMC has also prevailed in appeals before the First, Third, Sixth, and Ninth Circuits resulting in seminal decisions that have helped shape this relatively new area of ERISA jurisprudence. Moreover, KTMC is one of only a very few firms in the country with trial experience in ERISA "company stock" fiduciary breach class actions. Finally, in addition to its extensive litigation experience, KTMC has also successfully engaged in extensive, intricate and successful settlement negotiations and mediations involving complex legal and factual issues involving ERISA claims, resulting in large recoveries for affected classes.

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. at 624.

In addition, GME has extensive experience in complex litigation (including ERISA class actions) and also recommends this Settlement.[13] As District Judge Sue Lewis Robinson held in

---

[11]      *See* firm resume of KTMC attached to Joint Declaration as Exhibit 7.

[12]      Actions in which KTMC was appointed Lead or Co-Lead counsel include *In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. 621 (W.D. Okla. 2012) (appointing KTMC interim class counsel); *Harris v. First Regional Bancorp*, No. 10-cv-07164 (C.D. Cal. Jan. 26, 2011) (Order appointing KTMC interim class counsel); I*n re Advanta Corp. ERISA Litig.*, No. 09-cv-04974 (E.D. Pa. June 4, 2010); *In re R.H. Donnelley ERISA Litig.*, No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010); *Dann v. Lincoln Nat'l Corp.*, No. 08-cv-5740 (E.D. Pa. June 4, 2009) (order appointing KTMC as Interim Class Counsel for the putative plaintiff class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure); *In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) (appointing KTMC Interim Co-Lead Class Counsel); *In re: SLM Corp. ERISA Litig.*, No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008); *Grosick v. Nat'l City Corp.*, No. 08-cv-00144 (N.D. Ohio Jan. 17, 2008);, No. 08-cv-01357 (C.D. Cal. Nov. 1 I*n re First American Corp. ERISA Litig.*6, 2007); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-cv-00952 (N.D. Ga. Apr. 30, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *In re Lear ERISA Litig.*, No. 06-cv-11735 (E.D. Mich. Apr. 10, 2006).

[13]      *See* firm resume of GME attached to Joint Declaration as Exhibit 10.

*Outten v. Wilmington Trust Corp.*, 281 F.R.D. 193, 201 (D. Del. 2012) "Mr. Egleston is well qualified through extensive experience in securities class action litigation and complex litigation generally . . . ." "Mr. Egleston's past major litigation experience includes: "[1] *In re Deutsche Telekom A.G. Sec. Litig.* (S.D.N.Y.) ($120 million settlement fund); [2] *In re Willbros Group, Inc. Sec. Litig.* (S.D. Tex.) ($10.5 million settlement fund); *In re Lumenis Sec. Litig.* (S.D.N.Y.) ($20.1 million settlement); [3] *In re Marsh & McLennan Companies Inc. Sec. Litig.* ($400 million settlement); *In re Union Global Comm., Inc. S'holders Litig.* ($25 million recovery in going-private transactions); and [4] *In re Cablevision Sys. Corp. S'holders Litig.* (Blocked going-private transaction by controlling shareholder leading to payment of a dividend to shareholders worth approximately $2.5 billion)."

Based on (1) their extensive and broad-based experience litigating and successfully resolving ERISA breach of fiduciary duty cases, and (2) their diligence in investigating and prosecuting the claims in this Action, Co-Lead Class Counsel strongly recommend this Settlement.

      **6.      The Stage of the Proceedings and the Amount of Discovery Completed**

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325; *see also AIG*, 2011 WL 3290302, at *8 (same). As this Court noted, "the standard under this factor is not whether it is conceivable that more discovery could possibly be conducted." *Id.* Rather, the inquiry is whether enough discovery has taken place to ensure "effective representation" of the settlement class. *AIG v. ACE INA Holdings, Inc.*, 07-cv-2898, 2012 WL 651727, *9 (N.D. Ill. Feb. 28, 2012) (*AIG II*); *AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966-67 (N.D. Ill. 2011) (approving

settlement when no formal discovery – only "considerable, extensive informal discovery" – had been conducted). Here, while formal discovery between the parties has not yet begun, Plaintiffs nonetheless vigorously pursued and obtained third party discovery from Harris, the entity that acquired the Plan's trustee and recordkeeper, and so have a more than adequate basis for assessing the merits of Plaintiffs' claims and effectively representing class members' interests. Specifically, by an agreed motion by the Parties, Co-Lead Class Counsel served multiple subpoenas and further negotiated extensively with Harris to obtain the information necessary to effectuate the Settlement, including all available Plan transaction data. Plaintiffs were also able to obtain certain Plan-related documents from Defendants through Plaintiffs' letter request pursuant to ERISA Section 104(b)(4).

All of the documents obtained were closely examined and analyzed by Co-Lead Class Counsel. Based on this limited but significant discovery, Co-Lead Class Counsel have in-depth knowledge of the factual and legal issues in this case. This knowledge was enhanced by the opinions of both liability and damages experts. Although much remains to be done to prepare for a trial in this Action, Plaintiffs and Co-Lead Class Counsel are fully aware of the strength of the claims and potential risks, and believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Plan and the Plan's participants. Thus, the extent of discovery conducted weighs heavily in favor of final approval of the Settlement.

**IV.    THE FORM AND METHOD OF NOTICE SATISFY DUE PROCESS**

In accordance with the Court's Preliminary Approval Order, the Settlement Class has been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections. Pursuant to paragraph 6 of the Preliminary Approval Order, the Class Notice has been sent by first-class mail, postage prepaid, to the last known address of each

member of the Settlement Class who was identifiable by reasonable effort. A.B. Data, Ltd. ("A.B. Data"), an experienced class action claims administrator, administered the Class Notice. Using the mailing lists for physical addresses provided by the Defendants and third party services, A.B. Data initially mailed 2,696 Class Notices on February 14, 2013. *See* Affidavit of Christina Peters-Stasiewicz ("A.B. Data Affidavit"), attached to the Joint Decl. as Exhibit 4, ¶ 8. 160 of these mailed Class Notices were returned by the USPS to A.B. Data as undeliverable as addressed (UAA). *Id*. at ¶ 9. Three of those returned UAA had forwarding addresses, leaving 157 Settlement Class Members for whom Class Notices were returned as undeliverable without forwarding addresses. *Id*. Through a third-party locator service, A.B. Data performed additional address searches for these Settlement Class members and was able to find updated addresses for 139 Settlement Class members. *Id*. at ¶ 11. A.B. Data promptly remailed Class Notices to those updated addresses. *Id.* As of April 8, 2013 only 31 Class Notices remain undeliverable.

Additionally, pursuant to paragraph 6 of the Preliminary Approval Order, the Class Notice, Complaint, Settlement Agreement, and Settlement-related documents were published, along with other information, on the dedicated Settlement website www.AmcoreERISAsettlement.com, on February 14, 2013. As of the date of this submission, a total of 292 hits have been recorded at the Website. A.B. Data Affidavit, ¶ 14. Since February 14, 2013 A.B. Data has also maintained a toll-free number with an Interactive Voice Response ("IVR") system for Settlement Class Member inquiries. *Id.* at ¶ 12. An automated attendant answers calls, and presents Settlement Class Members with a series of choices in response to basic questions. *Id.* Callers can request that a Class Notice to be sent to them, and also have the option to leave a message for Co-Lead Class Counsel. *Id.* To date, a total of 15 voicemail messages have been received and forwarded. *Id*. at ¶ 12.

To satisfy due process, notice to interested parties must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbery v. U.S.*, 534 U.S. 161, 168 (2002) (citation omitted); 4 *Newberg on Class Actions* § 11:53 (4th ed. 2010). "Due process does not require that every class member *receive* notice," so long as reasonable measures were taken to provide individualized notice to identifiable class members. *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, No. MDL 2147, 2011 WL 2204584, at *30 (N.D. Ill. June 2, 2011) (citing cases) (emphasis supplied). *See also* 7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 1797.6 (3d ed. 2010) (noting that courts have approved notices "as long as sufficient contact information is provided to allow the class members to obtain more detailed information about those matters"). The notice plan utilized here fully informed Settlement Class Members of the Action and the proposed Settlement, and enabled them to make informed decisions about their rights meeting the requisite due process standard.

The notice plan outlined by the Court and employed by Co-Lead Class Counsel also satisfies the standards of Rule 23, which requires only that notice be "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2). Here, the form and method of notice of the proposed Settlement that were agreed to by the Parties and provided pursuant to the Preliminary Approval Order are "reasonable" procedures which satisfy applicable due process standards.

The Court should find that the Class Notice, the dedicated Settlement website, and dedicated Settlement phone number, are adequate in that they inform Settlement Class Members, among other things, of the terms of the proposed Settlement, how to object thereto, and how to obtain additional information, all in language that is clear, concise, and easy to understand. *See,*

21

*e.g.*, *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (finding notice to be adequate when it informed the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing); *Newberg on Class Actions*, § 8.34. Indeed, similar notice plans have been approved by courts in this District. *See, e.g.*, *Dalton v. Old Second Bancorp, Inc. et al.*, No. 11-cv-01112, Order Granting Preliminary Approval of Class Action Settlement, Modifying Class Certification for Settlement Purposes, Approving Form and Manner of Class Notice, and Scheduling of a Final Approval Hearing, at 3-4 (N.D. Ill. Mar. 1, 2013); *In re R.H. Donnelley ERISA Litig.*, Final Judgment And Order at 4.

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE TO SETTLEMENT CLASS MEMBERS

In connection with final approval of the Settlement, Plaintiffs also request that the Court approve their proposed Plan of Allocation of the Net Settlement Fund. A district court has broad supervisory powers with respect to allocating a class action settlement and wide latitude in determining what to consider in approving a settlement allocation. *In re "Agent Orange" Product Liability Litig. MDL No. 381*, 818 F.2d 179, 181 (2d Cir. 1987) (citation omitted). The Court has discretion in allocating settlement funds, and an allocation will be upheld unless there has been an abuse of discretion. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 175 (7th Cir. 1982).

Like the settlement itself, the plan of allocation should be fair, reasonable and adequate. *Heekin v. Anthem, Inc.*, No. 05-cv-01908, 2012 WL 5472087, at *1 (S.D. Ind. Nov. 9, 2012); *Summers v. UAL Corp. ESOP Comm.*, No. 03-cv-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005); *Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers*,

*L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97-cv-7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001). As such, it should not be overly complex, and, it should be responsive to class members' interests in the litigation: "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citation omitted). Courts give "substantial weight to the opinions of experienced counsel" regarding the fairness of an allocation. *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).

Here, the Plan of Allocation was designed by experienced Co-Lead Class Counsel in consultation with Nicholas L. Saakvitne, the Court-appointed Plan Administrator who will reinstate the Plan in order to allow the Net Settlement Fund to be distributed to Settlement Class Members through the Plan. *See* Preliminary Approval Order, ¶ 3. It is materially identical to plans approved in numerous other comparable cases. *See, e.g.*, *In re R.H. Donnelley Corp. ERISA Litig.*, Final Judgment And Order, at 6 (approving identical plan of allocation as "fair and reasonable" and ordering the settlement proceeds to be "distributed in accordance with the plan of allocation"). The Plan of Allocation is premised on calculating a Settlement Class Member's *pro rata* distribution based upon his/her balance in the Plan on the first day of the Class Period plus any acquisitions of Amcore Stock during the Class Period, and then subtracting all dispositions of Amcore Stock during the Class Period and the balance, if any, of Amcore Stock remaining on the last day of the Class Period.[14] If a Settlement Class Member's proportionate

---

[14]    The first day of the Class Period is July 2, 2007, however the Plan data Co-Lead Class Counsel received from Harris Bank, the Plan's trustee and recordkeeper prior to the Plan's termination, begins on the close of the trading day on June 29, 2007. Because Harris Bank does not maintain records of the daily trading transactions of the Plan, June 29, 2007 is the closest date to the start of the Class Period. Nevertheless, given that there was no trading activity between the close of the trading day on Friday June 29, 2007, and the start of the Class Period on Monday July 2 2007, any difference in value of Amcore

recovery is greater than zero but less than the *de minimus* amount ($9.99), as calculated according to the Plan of Allocation, that Settlement Class Member shall be deemed to have a final share of $0, and the remainder of the net proceeds will be distributed *pro rata* among other Settlement Class Members.

Payments will be made by crediting the accounts of active Settlement Class Members with the appropriate amount and by creating or re-creating an account for former Settlement Class Members who no longer have Plan accounts, and then crediting their accounts in the same manner. As of the date of this filing, Co-Lead Class Counsel have received no objections to this method of allocating the Settlement funds.[15]

Co-Lead Class Counsel recommends the proposed Plan of Allocation as fair, reasonable and not unduly complicated or expensive, and accordingly request that the Court adopt and approve it.

## VI.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Certification of the Settlement Class in this Action is warranted for numerous reasons. First and foremost, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1). *See* Preliminary Approval Order, Dkt. No. 96, at 3. Nothing has changed in the record that would compel the Court to reach a different conclusion with respect to the final, rather than preliminary, approval of the Settlement Class.

Second, plan-representative actions such as this are well-suited for class status because the claims are brought, by definition and in practice, on behalf of retirement plans and all of the

---

Stock on June 30, 2007 versus July 2, 2007 would be negligible (*i.e.* the price of Amcore on June 29, 2007 was $28.14, and was $27.96 on July 2nd. Rounded to the nearest whole dollar the Stock price is $28 for both days).

[15]     As noted above, the deadline for objecting to the Settlement is April 19, 2013.

affected plan participants. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held"). A overwhelming number of district courts throughout the country -- including within this Circuit -- have uniformly certified ERISA company stock fund cases alleging claims directly analogous to those asserted here. *See, e.g.*, *Dalton*, Preliminary Approval Order, at 2 (modifying definition of certified class, solely for the purposes of settlement, as class action certified pursuant to Rule 23(b)(1)); *In re R.H. Donnelley Corp. ERISA Litig.*, Final Judgment And Order, at 1, 3; *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011); *George v. Kraft Foods Global*, 270 F.R.D. 355, 369 (ND. Ill. 2010).

As set forth below, Rule 23(b)(1)'s requirements are easily met and certification of a Settlement Class is thus appropriate.

### A. The Proposed Settlement Class Satisfies the Requirements of Federal Rule 23(a)

To be entitled to class certification, Rule 23(a)'s four prerequisites to class certification must be satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012); FED. R. CIV. P. 23. In addition, the class must meet one of the three requirements of Rule 23(b). *Id.* A plaintiff whose suit meets the criteria specified by Rule 23 is categorically entitled to pursue his/her claim as a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 U.S. 1431, 1437 (2010).

### 1. Numerosity

In this Action, there are over 2,600 potential individuals in the Settlement Class (*see* A.B. Data Affidavit, ¶ 8), all of whom have the same common questions of law and fact. "Although

there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Accordingly, the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." To prove commonality, plaintiffs must "show that class members 'have suffered the same injury.'" *Gen Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982); *see also Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Indeed, "[t]o satisfy the commonality element, it is enough for plaintiffs to present just one common claim." *Id.* As the court noted in *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 349 (N.D. Ill. 2007), "a common set of operative facts is usually present when defendants are claimed to have engaged in standardized conduct toward the members of the proposed class," which is precisely the case here.

Here, the paramount question of law and fact shared by *all* Settlement Class Members is whether the Defendants breached their fiduciary duties owed to the Plan and the Plan's participants by allowing the Plan to invest in Amcore Stock when, as alleged by Plaintiffs, Defendants knew or should have known of, *inter alia,* problems besieging the Company, as detailed above and in the Complaint, which made Amcore Stock an imprudent investment for the Plan during the Class Period. *See Brieger*, 245 F.R.D. at 359 ("The Court finds that defendants' actions and decisions pertaining to the Plan amount to a common course of conduct vis-à-vis the putative class … because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact.") The recent Supreme Court decision in *Wal-Mart* did not change this tenet. *See Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551 (noting only that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"). In

26

light of these issues common to all Settlement Class Members, this Action undoubtedly satisfies the commonality requirement.

### 3.    Typicality

"A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and... [the] claims are based on the same legal theory.'" *Oshana v. Coco-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario*, 963 F.2d at 1018); *Northside Chiropractic, Inc. v. Yellowbook, Inc.*, No. 09-cv-4468, 2012 WL 3777010, at *9 (N.D. Ill. Aug. 29, 2012) (citation omitted). Here, the typicality requirement of Rule 23(a)(3) is undoubtedly satisfied because the Plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of other Settlement Class Members and are based on the same legal theory. *See, e.g.*, *Brieger*, 245 F.R.D. at 350 (holding that "plaintiffs' claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under [Section 1132(a)(2)] for alleged fiduciary violations as to the Plan"); *George*, 270 F.R.D. at 366-67 (finding typicality, reasoning "Plaintiffs, like other members of their putative class, seek relief on behalf of the Plan for alleged breaches of fiduciary duty" and "the relevant conduct-allegedly imprudent decisions involving the Funds-and legal theory-breach of fiduciary duty under ERISA-are the same for Plaintiffs and other members of their proposed class.")

### 4.    Adequacy of Representation

Finally, Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The analysis of the adequacy of representation under Rule 23(a)(4) has traditionally been characterized as a two part inquiry: "the adequacy of the named plaintiff's counsel, and the adequacy of the representation provided in protecting the different, separate, and distinct interest of the class members." *See*

27

*e.g.*, *Northside Chiropractic, Inc.*, No. 09-cv-4468, 2012 WL 3777010, at *9 (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). Today, however, the inquiry as to the adequacy of counsel is governed by Rule 23(g), while the adequacy of the named plaintiff remains subject to scrutiny under Rule 23(a)(4). *See* FED. R. CIV. P. 23 advisory committee's note; *Cima et al. v. Wellpoint Health Networks, Inc. et al.*, 250 F.R.D. 374, 380 n. 2 (S.D. Ill. 2008).

The standard for meeting the adequacy requirement of Rule 23(a)(4) are quite easily satisfied in this Action. Plaintiffs have no interests antagonistic to the interests of the absent Settlement Class Members. Plaintiffs, participants in the Plan during the Class Period, suffered injury from and are suing for Plan-wide relief for identical alleged breaches of fiduciary duty on the part of Defendants, and seek relief that will inure to the direct benefit of the Plan and therefore to the entire proposed Settlement Class. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (plaintiffs satisfied adequacy requirement where they, like other class members, sought relief from AT&T's allegedly unlawful tax collections which affected the entire class uniformly).[16]

B.     **The Settlement Class May be Properly Certified Under Rule 23(b)(1)**

1.     **Certification Under Rule 23(b)(1)(B) is Most Appropriate**

Many courts have relied upon subsection (b)(1)(B) of Rule 23 in certifying class actions based upon allegations that defendants breached their fiduciary obligations to plaintiffs. *See George*, 270 F.R.D. at 369 (holding "in light of the derivative nature of Section 1132(a)(2)

---

[16]     Plaintiffs address the adequacy of counsel below in their discussion of Rule 23(g). *See* Section VI.B.3, *infra.* As discussed therein, Plaintiffs have retained qualified, experienced attorneys who are at the forefront of this type of ERISA breach of fiduciary duty class action litigation. *See also* Section V.A.4, *supra*; Co-Lead Class Counsels' firm resumes attached to the Joint Decl. as Exhibits 7 and 10; Memorandum in support of the Fee Motion at pages 14-18.

claims, breach of fiduciary duty claims brought under this statutory provision are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.") (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604); *Neil*, 275 F.R.D. at 267 (same).[17] As such, certification under subsection (b)(1)(B) would be appropriate here.

### 2. Certification Under Rule 23(b)(1)(A) is also Proper

In the alternative, certification under subsection (b)(1)(A) is appropriate. In fact, it is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23. *See, e.g., Dalton et al. v. Old Second Bancorp, Inc. et al.*, No. 11-cv-01112, slip op. (N.D. Ill. Sept. 20, 2011) (certifying class where plaintiffs moved for certification under Rule 23(b)(1)(A) and 23(b)(1)(B)). A number of district courts have recognized that the nature of these cases, which challenges defendants' plan-wide conduct, makes this result particularly appropriate. *See, e.g., In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009) (certifying class under Rule 23(b)(1)(A) and noting "the risk of establishing inconsistent standards under ERISA is particularly strong where, as here, a central element of the prudence claims is not an individual matter: the fiduciary duties are owed to the plan."). Therefore, if necessary, it is clear that the Settlement Class could be certified under Rule 23(b)(1)(A).

---

[17] *See also Loomis v. Exelon Corp.*, No. 06-cv-4900, 2007 WL 2060799, at *1, 5 (N.D. Ill. June 26, 2007) (certifying 23(b)(1) class alleging breach of fiduciary duty); *Baker*, 2007 WL 1597654, at *5 ("Because the relief sought by plaintiffs involves the recovery and distribution of plan assets, separate actions by individual plaintiffs would impair the ability of other class members to protect their interests. Plaintiffs therefore meet the requirements of 23(b)[(1)(B)]."); *Smith v. Aon Corp.*, 238 F.R.D. 609, 617 (N.D. Ill. 2006) (certifying ESOP class action under 23(b)(1)); *Rogers v. Baxter Int'l. Inc.*, No. 04-cv-6476, 2006 WL 794734, at *1, 11 (N.D. Ill. Mar. 22, 2006) (certifying ERISA class action under 23(b)(1)); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-cv-8324, 2006 WL 1593902, at *1 (N.D. Ill. Feb. 15, 2006) ( "[t]he Plaintiff class was certified pursuant to Federal Rule of Civil Procedure 23(b)(1)").

29

3.      **Proposed Co-Lead Class Counsel Satisfy Rule 23(g)**

Federal Rule 23(g) specifies that unless a statute provides otherwise, a court that certifies a class must appoint class counsel, and an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." *Donovan v. St. Joseph County Sheriff*, No. 11-cv-133, 2012 WL 1601314, at *8 (N.D. Ind. May 3, 2012) (quoting FED. R. CIV. P. 23(g)(4)).  In making this determination, courts must "consider the work counsel has done in 'investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the litigations, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.'" *Id.* (quoting FED. R. CIV. P. 23(g)(1)(A)).  Here, each of these considerations demonstrate the adequacy of Co-Lead Class Counsel.

As detailed above, Co-Lead Class Counsel have performed extensive research and investigation in connection with filing and litigating the instant Action. *See* discussion *supra* in Sections II.A, II.C.  Co-Lead Class Counsel and Liaison Counsel prosecuted this litigation before this Court devoting considerable time and resources to these proceedings to protect the rights of the Named Plaintiffs and the Settlement Class.   The course of this litigation has amply demonstrated Co-Lead Class Counsel's knowledge of the applicable law and willingness to devote the resources necessary to protecting the interests of the Settlement Class.

VII.   **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully submit that the Court grant final, judicial approval to the Settlement, certify the Settlement Class, and approve the Plan of Allocation as fair, reasonable and adequate.

30

Dated:  April 9, 2013

Respectfully submitted,

By:  */s/ Mark K. Gyandoh*
Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert-Johnson
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko@ktmc.com
Email:  pmuhic@ktmc.com
Email:  mgyandoh@ktmc.com
Email:  jsjohnson@ktmc.com

*Co-Lead Class Counsel*

**GAINEY McKENNA & EGLESTON**

By: */s/ Gregory M. Egleston*
      Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone:  (212) 983-1300
Facsimile:  (212) 983-0383
Email: gegleston@gme-law.com

*Co-Lead Class Counsel*

**MEYER & HORNING, P.C.**
Timothy F. Horning
3400 North Rockton Avenue
Rockford, IL 61103
Telephone:  (815) 636-9300
Facsimile:  (815) 636-9352
Email: thmeyerhorning@aol.com

*Liaison Class Counsel*

**LASKY & RIFKIND, LTD.**
Norman Rifkind, Esq.
Leigh R. Lasky, Esq.
351 W. Hubbard Street
Suite 401
Chicago, IL 60654
Telephone: (312) 634-0057
Email: rifkind@laskyrifkind.com
Email: lasky&laskyrifkind.com

*Counsel for Plaintiffs Michelle Kretsinger
and Keith Kretsinger*


**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rigrodskylong.com
Email: bdl@rigroskylong.com

**RIGRODSKY & LONG, P.A.**
Timothy J. MacFall
Olga A. Pettigrew
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: tjm@rigrodskylong.com

*Counsel for Plaintiff Merry F. Shane*

32

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

DATED: April 9, 2013

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh